```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS

SUPER 8 MOTEL,            )
                          )
        Plaintiff,        )
                          )
     v.                   )   Case Number: 04CV30117-MAP
                          )
UNITED STATES,            )
                          )
        Defendant         )
```

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

The plaintiff seeks damages as a result of lost mail. The plaintiff's claim should be dismissed because:

(1) it failed to file an administrative claim under the Federal Tort Claims Act; and

(2) claims for lost mail are not actionable.

### BACKGROUND

The Super 8 Motel of Greenfield filed a complaint in small claims court against the Greenfield Post Office and the Greenfield Postmaster, Rick Callahan, seeking damages resulting from lost mail, specifically, a vacuum. Pursuant to the Federal Tort Claims Act ("FTCA"), the United States Attorney certified that Callahan was acting within the scope of his employment with respect to the events alleged in the complaint. Therefore, on June 21, 2004, the United States was substituted as the defendant and the case was removed to federal court. 28 U.S.C. § 2679.

ARGUMENT

PLAINTIFF'S TORT CLAIM IS BARRED BY SOVEREIGN IMMUNITY.

    A.    **The Plaintiff Has Failed to Exhaust Administrative Remedies Pursuant to the Federal Tort Claims Act.**

The plaintiff's claim must be dismissed because it failed to satisfy the jurisdictional prerequisite of filing an administrative claim. The FTCA is a limited waiver of sovereign immunity and its provisions must be strictly construed. Dynamic Image Tech v. United States, 221 F.3d, 34, 39 (1st Cir. 2000). Before the United States may be sued under the FTCA, the plaintiff must file an administrative claim with the relevant agency. 28 U.S.C. § 2675. Gonzalez v. United States, 284 F.3d 281, 286 (1st Cir. 2002) (compliance with this requirement is a jurisdictional prerequisite to suit that cannot be waived.)

The plaintiff has not filed an administrative claim. See Exhibit A. Therefore, its complaint must be dismissed.[1] Eveland v. Director of Central Intelligence, 843 F.2d 46, 50 (1st Cir. 1980) (failure to follow the claims procedure deprives the Court of jurisdiction over tort claims against the United States.

    B.    **The United States Cannot be Held Liable for Claims for Negligent Transmission of Mail**

Even if the plaintiff had filed the requisite administrative claim, its complaint should be dismissed because the United

---

[1] Since the United States was substituted as the defendant under 28 U.S.C. § 2679, the plaintiff has 60 days to file an administrative claim following dismissal of the complaint.

2

States has not waived sovereign immunity for claims arising out of lost mail. By enacting the FTCA, Congress provided a waiver of sovereign immunity in certain cases; however, Congress specifically retained sovereign immunity with respect to claims "arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b); Allied Coin Investment, Inc. v. United States Postal Service, 673 F. Supp. 982, 984 (D. Minn. 1987).[2]

The plaintiff's claim for damages as the result of lost mail falls squarely within the exception to the waiver of sovereign immunity embodied in the FTCA for claims relating to the loss, misdelivery, or negligent transmission of mail matter. See 28 U.S.C. § 2680(b). Therefore, the complaint must be dismissed. See Insurance Co. of North America v. United States Postal Service, 524 F. Supp. 349 (W.D. La. 1981), aff'd 675 F.2d 756 (5th Cir. 1982).[3]

---

[2] The operation of the exception to the waiver of sovereign immunity embodied in 28 U.S.C. § 2680(b) is in no way precluded by the "sue and be sued" clause of 39 U.S.C. § 401(1). The FTCA plainly provides that:

> The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section1346(b) . . . .

28 U.S.C. § 2679(a); See Dauric Marine Corp. v. U.S. Postal Service, 238 F.3d 58, 61-62 (1st Cir. 2001)

[3] There is no evidence that the plaintiff purchased insurance for his package. Ex. B. The purchase of insurance would have allowed the plaintiff to make an indemnity claim with the United

3

## CONCLUSION

Based upon the foregoing, the defendant respectfully requests that this action be dismissed with prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
KAREN L. GOODWIN
Assistant U.S. Attorney
1550 Main Street, Room 310
Springfield, MA 01103-1422
(413) 785-0269

DATED: June 28, 2004

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this date, postage prepaid, to the Super 8 Motel, 21 Colrain Road, Greenfield, MA 01301.

_____
Karen L. Goodwin

---

States Postal Service. Ex. B. Insurance would not, however, allow the plaintiff to bring suit for damages.

4

## DECLARATION OF DIANE M. WILLIAMS

Pursuant to the authority of 28 U.S.C. § 1746, I make the following declaration:

1. I am over 21 years of age, and know and understand the obligations of oath.

2. I am employed as a Paralegal Specialist for the United States Postal Service. My office is located in Windsor, CT. I have been employed by the Postal Service since 1985.

3. In my official capacity as Paralegal Specialist for the Postal Service, I conducted a reasonable search of United States Postal Service files, on May 3, 2004, to determine whether Super 8 Motel had filed an administrative tort claim pursuant to the Federal Tort Claims Act or currently has outstanding tort claims against the Postal Service. The Postal Service has no record that a claim has been filed, or is pending against the Postal Service by Super 8 Motel.

I declare under penalty of perjury of the laws of the United States that the above statements are true.

Dated: May 13, 2004

Diane M. Williams
Paralegal Specialist
Windsor Law Office
8 Griffin Road North
Windsor, CT  06006-0170
Telephone:  (860) 285-7344
Fax:  (860) 285-7397



EXHIBIT A

## DECLARATION OF WILLIE B. MIXON

I, Willie B. Mixon, under penalty of perjury, hereby declare that to the best of my knowledge, information and belief:

1. I am the Supervisor of Claims Processing, United States Postal Service. My present position includes monitoring claims relating to insured mail, including domestic insured mail claims filed pursuant to correspondence with claimants and/or their representatives who have submitted or have intended to submit claims in connection with alleged loss or destruction of mail claims to the Postal Service.

2. In this capacity, I receive claim forms and related documentation and have access to files regarding claims filed with the Postal Service pursuant to the provisions of the Domestic Mail Manual and other relevant Postal laws and regulations. I supervise the adjudication of all such claims for the Postal Service nationwide.

3. On May 13, 2004, I conducted a reasonable search of United States Postal Service files, to determine whether Plaintiff Super 8 Motel had filed an insured mail claim regarding parcel post, delivery confirmation No. 0303 0130 0002 6499 5665, allegedly containing a vacuum cleaner valued at $260.00, or currently has outstanding insured mail claims against the Postal Service. My search indicates no such claim has been field, nor is any such claim pending against the Postal Service by Plaintiff Super 8 Motel.

EXHIBIT B

## CERTIFICATION OF DECLARATION

I, Willie B. Mixon, make the following certification in lieu of an oath, as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this certification is the legal equivalent of a statement under oath.

I certify under penalty of perjury that the foregoing declaration of Willie B. Mixon is true and correct.

_____
Willie B. Mixon

Dated this 13th day of May, 2004.

Contents--Domestic Mail Manual

Page 1 of 1

## United States Postal Service



# Domestic Mail Manual

DMM Issue 58 Plus Postal Bulletin Changes Through PB 22115 (11-13-03)

Transmittal Letter

DMM Overview

Decision Trees and
Quick Service Guides

Addressing

Characteristics and Content

Deposit, Collection, and Delivery

Eligibility

Forwarding and Related Services

General Information

Labeling Lists

Mail Preparation and Sortation

Postage and Payment Methods

Rates and Fees

Special Services

Index Information

B

Domestic Mail Manual Transmittal Letter

Page 1 of 2

## Domestic Mail Manual



DMM Issue 58 plus Postal Bulletin changes through PB 22115 (11-13-03)

**Purpose.** The *Domestic Mail Manual* (DMM), revised and published periodically, contains the official rates and standards of the U.S. Postal Service governing domestic mail services (see G020).

**Effective Date.** This book includes all revisions issued since the publication of DMM Issue 58 (dated 6-10-03). This edition includes all of the rate and classification changes effective June 30, 2002.

**Summary of Changes.** A description of revisions made since the publication of DMM Issue 58 is in I010. The summary of changes is presented in two ways: by effective date and by DMM module. Mailing standards in the DMM are amended or rescinded by notices in the *Postal Bulletin* or the *Federal Register*.

**Availability**

**Public.** The public can access the DMM and other publications in PDF and HTML formats on the Postal Explorer Web site at http://pe.usps.gov. The online DMM is updated monthly. Annual subscriptions for printed copies are available only through the Superintendent of Documents, U.S. Government Printing Office, 202-512-1800.

**USPS.** Postal employees can access the DMM and other publications in PDF and HTML formats on the USPS Web site. The online DMM is updated monthly. Each printed issue of the DMM is distributed to postal facilities. Offices requiring more copies must order them through the Material Distribution Center using standard ordering procedures.

**How to Use This Book.** A "how-to" guide is located at the beginning of this book. Also included is a series of *Quick Service Guides* — two-page overviews of mail classification and preparation.

**DMM Transformation Project.** The DMM is being transformed into a series of printed documents and electronic systems that make it easy for readers to find information and understand USPS mailing requirements. Two publications are available now: the DMM 100, *A Customer's Guide to Mailing*, for retail customers, and the DMM 200-A, *A Guide to Mailing for Businesses and Organizations*. Both publications are in post offices and online at www.usps.com.

**Comments.** Contact your local post office, business mail entry unit, or rates and classification service center with comments or questions about the standards in this document (see G042 for addresses and telephone numbers).

*[signature: Stephen M. Kearney]*

Stephen M. Kearney
*Vice President*
*Pricing and Classification*

**Domestic Mail Manual**

**DMM Issue 58 plus Postal Bulletin changes through PB 22115 (11-13-03)**

11/10/2003

Domestic Mail Manual Transmittal Letter

Published by

Mailing Standards
Pricing and Classification
U.S. Postal Service

DMM Issue 58 Plus Postal Bulletin Changes Through PB 22115 (11-13-03)

 

S000 Miscellaneous Services

# S010 Indemnity Claims

**Summary**

S010 describes general filing instructions for indemnity claims for insured, COD, registered, or Express Mail. It also explains payment procedures, nonpayable claims, and how to appeal a decision.

## 1.0 Special Services With Indemnity

A customer may file an indemnity claim for insured, collect on delivery (COD), registered with postal insurance, or Express Mail. Inquiries on uninsured registered mail may be filed as detailed in S911.

## 2.0 General Filing Instructions

### 2.1 Who May File

A claim may be filed by:

a. Only the sender, for the complete loss of a registered, insured, COD, or Express Mail item (including merchandise return service parcels to which special services were added and paid for by the sender).

b. Either the sender or addressee, for damage or if some or all of the contents of an article are missing.

c. Only the merchandise return permit holder, for merchandise return service parcels that are registered or insured as indicated by the permit holder on the MRS label.

d. Only the sender, for bulk insured service mail.

### 2.2 When to File

A customer must file a claim immediately when the contents of an article are damaged or missing. For a lost article, a customer must file a claim within the time limits in the chart below.

| Mail Type or Service | When to File (From Mailing Date) | |
|---|---|---|
|  | No Sooner Than | No Later Than |
| Bulk Insured | 30 days | 180 days |
| COD | 60 days | 1 year |
| Express Mail | 7 days | 90 days |
| Express Mail COD | 60 days | 90 days |
| Insured | 30 days | 1 year |
| Registered | 15 days | 1 year |
| Registered COD | 60 days | 1 year |
| Exceptions: Claims for loss of insured and COD articles (including insured articles sent to APO and FPO addresses) originating at or addressed to post offices outside the contiguous 48 states may be filed only: a. After 45 days if article sent First-Class Mail, space available mail (SAM), or parcel airlift (PAL). b. After 60 days if article sent COD. c. After 75 days if article sent by surface. | | |

Domestic Mail Manual S010 Indemnity Claims                                         Page 2 of 8

**2.3 Where to File**

A claim may be filed:

a. At any post office, station, or branch, except for registered merchandise return service.

b. Only at the post office where the merchandise return permit is held, for articles mailed as registered with merchandise return service.

**2.4 How to File**

A customer may file a claim by presenting evidence of insurance, evidence of value, and proof of loss or damage. (Proof of loss is not required for COD or Express Mail claims.) If the article was mailed Express Mail COD, the sender must provide both the original COD and Express Mail receipts. The customer must complete the applicable spaces on Form 1000.

**2.5 Evidence of Insurance**

For a claim involving insured, COD, registered, or Express Mail service, the customer must present any of the following evidence showing that the particular service was purchased:

a. The original mailing receipt issued at the time of mailing (reproduced copies are not acceptable).

b. The wrapper showing the names and addresses of the sender and the addressee and the proper mail endorsement, tag, or label showing that the article was sent insured, COD, registered with postal insurance, or Express Mail. If only the wrapper is submitted, indemnity can be limited to $100 for insured, $50 for COD, $100 for registered mail, and $100 for Express Mail.

c. For Express Mail items accepted for mailing under an Express Mail Manifesting agreement in P910, a copy of the manifest page showing the Express Mail label number for the item in question; the manifest summary page for the date the piece was mailed; a copy of Form 3152-E, *Express Mail Manifesting Certification*, round-dated by the accepting post office; and a copy of the EMCA monthly statement that lists the label number and postage for the mailpiece. If the customer purchased additional insurance, a copy of the round-stamped Form 3877, *Firm Mailing Book for Accountable Mail*, must also be submitted.

**2.6 Evidence of Value**

The customer must submit acceptable evidence to establish the cost or value of the article at the time it was mailed. (Other evidence may be requested to help determine an accurate value.) Examples of acceptable evidence are:

a. Sales receipt, invoice, or statement of value from a reputable dealer.

b. Customer's own statement describing the lost or damaged article and including the date and place of purchase, the amount paid, and whether new or used (only if a sales receipt or invoice is not available). If the article is handmade, the statement must include the price of the materials and labor used. The statement must describe the article in enough detail to determine whether the value claimed is accurate.

c. Picture from a catalog showing the value of a similar article (only if a sales receipt, invoice, or statement of value from a reputable dealer is not available). The date and place of purchase must be included.

d. Paid repair bills; if the claim is for partial damage, estimates of repair costs or appraisals from a reputable dealer. Repair costs may not exceed the original purchase price.

e. Receipt or invoice for the costs incurred to buy a surety bond required to reissue a lost item.

f. Receipt or invoice of costs incurred for the reconstruction of nonnegotiable documents.

**2.7 Missing Contents**

If a claim is filed because some or all of the contents are missing, the customer must present the container and packaging to the USPS when filing the claim. Failure to do so results in the denial of the claim.

**2.8 Damage**

If the addressee files the claim, the addressee must present the article with the packaging and mailing container to the USPS for inspection. If the sender files the claim and the addressee has the damaged article, the sender's post office sends the claim to the addressee. The addressee then must present the article, packaging, and container to the USPS for inspection.

**2.9 Proof of Loss**

To file a claim, the sender must provide proof of loss of insured or registered mail. Proof of loss is not required for COD or Express Mail claims. Any one of these documents is acceptable:

a. A letter or statement from the addressee, dated at least 30 days (15 days for registered mail) after the date that the article was mailed, reporting that the addressee did not receive the article. The statement or a copy of it must be attached to the claim.

b. The proper part of the claim Form 1000 completed and signed by the addressee reporting that the article was not received.

c. A statement from the post office of address reporting that no delivery record is on file. The sender can obtain this statement by sending a written request to the post office of address with a check or money order for an amount equivalent to the delivery record fee in R900.24.0; this amount will be reimbursed if the claim is paid. The request must include the names and addresses of the sender and addressee, the insured or registered number, and the mailing date.

**2.10 Duplicate Claim**

A customer must file any duplicate claim within the time limits in the chart below. To file a duplicate claim, the customer must either (1) submit a photocopy of the customer's completed part of the claim form or (2) request the post office where the claim was filed to process a photocopy of the post office's receipt copy of the claim form.

| Mail Type or Service | When to File | |
|---|---|---|
| | No Sooner Than (From Original Claim Date) | No Later Than (From Original Mailing Date) |
| COD | 45 days | 18 months |
| Express Mail | 45 days | 6 months |
| Express Mail COD | 45 days | 6 months |
| Insured | 45 days | 18 months |
| Registered | 90 days | 18 months |
| Registered COD | 90 days | 18 months |
| Duplicate registered mail and Express Mail claims may not be filed without authorization by the St. Louis ASC or the Consumer Advocate, USPS Headquarters. | | |

**2.11 Payable Claim**

Insurance for loss or damage to insured, registered, or COD mail within the amount covered by the fee paid or within the indemnity limits for Express Mail as explained in 2.12 is payable for the following:

a. Actual value of lost articles at the time and place of mailing (see 2.11n for bulk insured articles).

b. Cost of repairing a damaged article or replacing a totally damaged article not exceeding actual value of the article at the time of mailing.

c. Remittance due on a COD parcel not received by the sender, subject to the limitations set by the standards for COD service.

d. Reasonable costs incurred duplicating documents such as:

(1) Copying service.

(2) Notary fees.

(3) Bonding fees for replacement of stock or bond certificates.

(4) Reasonable attorney's fees if required to replace the lost or damaged documents.

(5) Other direct and necessary expense or cost, as determined by the USPS.

(6) Face value of negotiable documents that cannot be reconstructed up to the amount of insurance coverage bought, but not to exceed the $25,000 maximum amount of insurance coverage available if sent by registered mail.

e. Extra cost of gift wrapping, if the gift-wrapped article was enclosed in another container when mailed.

f. Cost of outer container, if designed and constructed for the article sent.

g. Fair market value of stamps and coins of philatelic or numismatic value, as determined by a recognized stamp or coin dealer or current coin and stamp collectors newsletters and trade papers.

h. Federal, state, or city sales tax paid on articles lost or totally damaged.

i. Postage (not fee) paid for sending damaged articles for repair. (The USPS must be used for this purpose. Other reasonable transportation charges may be included if the USPS is not available.)

j. Cost of film stock or blank tape for photographic film, negatives, slides, transparencies, videotapes, laser disks, x-rays, magnetic resonance imaging (MRI) prints, computerized axial tomography (CAT) scan prints, etc.

k. Cost of bees, crickets, or baby poultry destroyed by *physical* damage to the package or delay for which the USPS is responsible. (In the absence of definite evidence showing responsibility for death of these insects or animals, the USPS is presumed to be at fault if 10% or more are dead on delivery, and pays indemnity for all dead bees, crickets, or poultry; if less than 10%, the USPS is not presumed to be at fault.)

l. Cost of filing a lost ticket report with the airline.

m. Per page copying cost of lost or damaged blueprints, schematics, etc.

n. For bulk insured articles, indemnity is provided for the lesser of (1) the actual value of the article at the time of mailing or (2) the wholesale cost of the contents to the sender.

2.12 Payable Express Mail Claims

In addition to the payable claims in 2.11, the following are payable for Express Mail:

a. For Express Mail insurance, nonnegotiable documents are insured against loss, damage, or rifling while in transit. Coverage is limited to $100 per piece (the unit on which postage is paid), subject to a maximum limit per occurrence as provided in 2.12a (4). Claims for document reconstruction insurance must be supported by a statement of expense incurred in reconstruction. For this standard, while in transit begins when the USPS receives custody of the insured material and ends when the material is delivered to the addressee or, if undeliverable, when the sender receives the material on return. Nonnegotiable documents include audit and business records, commercial papers, and such other written instruments for the conduct and operation of banks and banking institutions that have not been made negotiable or cannot be negotiated or converted into cash without forgery. Nonnegotiable documents can be in hard copy, disk, tape, microfilm, or other forms of data storage. Articles such as artwork, collector or antique items, books, pamphlets, readers proofs, repro proofs, separation negatives, engineering drawings, blueprints, circulars, advertisements, film, negatives, and photographs are considered merchandise, not documents. Indemnity for document reconstruction is paid as follows:

(1) For payments made (or which are payable) for reasonable costs incurred in the reconstruction of the exact duplicate of a lost or damaged nonnegotiable document. Indemnity is not paid for the cost of preparing the document mailed, or for the mailer's time in preparing the document mailed or reconstructed. Except for the per page copying cost, indemnity is not paid for documents if copies of the lost document are available or if they could have been made before mailing.

(2) Reasonable reconstruction expenses incurred or obligated between the time of guaranteed or scheduled delivery and actual delivery.

(3) Loss sustained by the use of funds to maintain cash balances during the period of document reconstruction (based on the applicable Federal Reserve discount rate). The period begins at the scheduled delivery time and may not exceed 15 days.

(4) Catastrophic loss for multiple Express Mail items, such as a major fire, limited to $5,000, regardless of the number of Express Mail items, or the identity or number of customers involved. Each claim resulting from a catastrophic loss first is adjudicated individually. If the preliminary adjudication exceeds $5,000, the percentage of the sum represented by each individual settlement is applied to the $5,000 to determine each claimant's pro rata share of the final settlement, not to exceed $100 per piece.

b. Merchandise insurance coverage is provided against loss, damage, or rifling and is limited to $100. (Additional insurance, up to a maximum liability of $5,000, may be purchased for merchandise valued at more than $100.)

c. For negotiable items, currency, or bullion, the maximum indemnity is $15.

2.13 Payment

The USPS does not make payment for more than the actual value of the article (or, for bulk insurance, the wholesale cost of the contents to the sender if a lesser amount) nor make payment for more than the maximum amount covered by the fee paid.

2.14 Nonpayable Claims

Indemnity is not paid for collect on delivery (COD), insured, or registered service or for Express Mail in these situations:

a. Evidence of insurance coverage not provided.

b. Loss, rifling, or damage occurred after delivery by the USPS.

c. Claim based solely on sentimental rather than actual value.

d. Requested replacement value exceeded actual value at the time and place of mailing.

e. The contents of film (e.g., positives, negatives, slides, transparencies, videotapes, laser disks, x-rays, magnetic resonance imaging (MRI) prints, computerized axial tomography (CAT) scan prints), the cost of creating or re-creating these items, or the photographer's time and expense in taking the photographs.

f. Loss resulted from delay of the mail, except under 2.12a(2).

g. Consequential loss claimed rather than the actual value of the article.

h. Perishable contents froze, melted, spoiled, or deteriorated.

i. Damage by abrasion, scarring, or scraping to articles not properly wrapped for protection.

j. Death of baby poultry caused by shipment to points where delivery could not be made within 72 hours from the time of hatching, unless it is determined that transportation was in place to achieve the 72-hour target.

k. Death of honeybees, crickets, and harmless live animals not the fault of the USPS (mailability of these insects and animals is subject to C022).

l. The sender or addressee failed to cooperate in the completion of required claim forms.

m. Fragile nature of article prevented its safe carriage in the mail, regardless of packaging.

n. Personal time required to replace documents.

o. Claim filed after the article transported outside the USPS.

p. Damage caused by shock, transportation environment, or x-ray, without evidence of damage to the mailing container.

q. Mail article or part or all of its contents officially seized while in the military postal system overseas.

r. Negotiable items (defined as instruments that can be converted to cash without resort to forgery), currency, or bullion valued in total at more than $15 per shipment sent by Express Mail, except under 2.12c.

s. Consequential loss of Express Mail claimed, except under 2.12a(3).

t. Nonmailable items, prohibited items, or restricted items not prepared and mailed according to postal standards, or any item packaged in such a manner that it could not have reached its destination undamaged in the normal course of the mail.

u. Loss or damage caused by employees or agents of the sender or addressee.

v. Radioactive injury, electrical or magnetic injury, or erasure of electrical recordings.

w. War, insurrection, or civil disturbance, or seizure by any agency of government.

x. Loss after items signed for by the addressee, the addressee's agent, or delivery employee if authorized under the applicable standards.

y. Items sent COD without the addressee's consent.

z. Adult birds in Express Mail with no physical damage to the container.

aa. Cost incurred for estimates and appraisals.

ab. Lottery tickets, sweepstakes tickets, contest entries, and similar items.

2.15 Depreciation

The USPS depreciates a used article either lost or damaged based on the life expectancy of the article.

3.0 Payment

3.1 Insufficient Fee

If, through an established error by the USPS, a fee was charged for less than that required to pay for the amount of insurance coverage requested at the time of mailing, the sender may pay the difference. Indemnity may be paid within the limit fixed for the higher fee. This applies only to the insurance fee when the article is insured. An additional fee may not be paid to register an article previously sent by insured mail, to buy insurance on mail sent as uninsured registered, or to increase the indemnity on the registered article. The declared value must already be noted on Form 3806 or Form 3813-P. Customers must complete all entries on Form 3877 or facsimile.

3.2 Loss or Total Damage

If the insured, registered, or COD article is lost or the entire contents totally damaged, the payment includes an additional amount for the postage (not fee) paid by the sender. Postage for Express Mail is refunded under S500.

3.3 Dual Claim

If the sender and the addressee both claim insurance and cannot agree on which one should receive the payment, any payment due is made to the sender.

3.4 Incompetent or Deceased

Domestic Mail Manual S010 Indemnity Claims                                        Page 7 of 8

If the payee is incompetent or deceased, payment is made to the legal representative. If there is no legal representative, payment can be made at the discretion of the USPS.

**3.5 Recovered Article**

If a lost registered, insured, COD, or Express Mail article is recovered after payment of a claim, the payee may accept the article and reimburse the USPS for the full amount paid if the article is undamaged. If the article is damaged, has depreciated, and reimburse the USPS in an amount set by the Consumer Advocate

Domestic Mail Manual S010 Indemnity Claims

### 5.3 Submission of Claim Form

Using the marked list, the mailer must complete the parts of Form 1000 for each claim to be sampled. Information on Form 1000 must be identical with the entries on Form 3877 or its facsimile. The actual mailing date must be used. The claimant must also complete other parts of Form 1000. The mailer's name and address shown on Form 3877 and Form 1000 must be the same as the mailer's name and address on the COD forms. The mailer must submit Forms 1000 in the same order as they appear on the list. The mailer must also provide a separate list of the claims to be sampled. Address labels for use with this list expedite the claim adjudication.

### 5.4 Partial Payment

A partial payment, based on the COD claims that the addressee post office can verify, generally is made between 45 and 60 days after the claims are sent to the addressee post office.

### 5.5 Mailer Review

The Accounting Service Center (ASC) issues to the mailer a report and a check for the balance due the mailer. After reviewing the report, the mailer may review the results of the addressee post office's search of delivery records shown on disallowed completed claim forms. The mailer must do this within 2 weeks after receiving the report and check from the ASC. Failure to do so constitutes the mailer's concurrence with the ASC report. The mailer is not provided with photocopies of completed claim forms or delivery records. Before a check is issued, this review of nonpayable claims must take place with USPS employees at the post office where the claims were filed. If a discrepancy is noted, the ASC reissues a check after the discrepancy is resolved. When the mailer cashes the check for the balance due, the mailer shows concurrence with the ASC report. If any discrepancy cannot be resolved, the mailer may appeal the decision under 4.2 and 4.3.

### 6.0 Bulk Insured Claims

Mailers authorized to mail at bulk insured rates under S913 will receive instructions for filing claims from their postmaster or designee, including specific claim numbers to be used when filing claims. At some time in the future, electronic filing of indemnity claims will become mandatory. Prior to mandatory electronic claims filing, customers will be provided with the format instructions for the new electronic (soft copy) of Form 3877 and instructions for electronic filing of indemnity claims.

DMM Issue 58 Plus Postal Bulletin Changes Through PB 22115 (11-13-03)